IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-00508-PAB-NYW

BRIAN HALIK,

     Plaintiff,

v.

A. BREWER, Officer, Colorado Springs Police Department, individually and in his official capacity, and
UNKNOWN OFFICERS OF THE TACTICAL ENFORCEMENT UNIT, Colorado Springs Police Department, individually and in their official capacity,

     Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Nina Y. Wang**

     Before the court is "Defendant Brewer's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6)." (["Motion"], Doc. No. 6.)  Plaintiff has responded in opposition to the Motion, and Defendant has replied.  (["Response"], Doc. No. 19; ["Reply"], Doc. No. 23.)  For the following reasons, it is **RECOMMENDED** that the Motion be **GRANTED in part, and DENIED in part**.

### BACKGROUND

     The following is drawn from the operative Complaint, and is taken as true for the purposes of this Motion.  *Pro se* Plaintiff Brian Halik ["Mr. Halik," or "Plaintiff"] brings this lawsuit, pursuant to 42 U.S.C. § 1983 and/or *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), asserting violations of his constitutional rights by a Colorado

Springs Police Department ["CSPD"] officer assigned to a federal task force, Defendant A. Brewer ["Officer Brewer," or "Defendant"], as well as unknown members of the CSPD's SWAT team. (["Complaint"], Doc. No. 1 at ¶¶ 1, 3, 5-7.)

According to the Complaint, on the morning of February 20, 2019, Officer Brewer "knowingly lied on a sworn affidavit in order to unlawfully obtain a state search warrant" for the search of Mr. Halik's home, located in Colorado Springs, Colorado.  (*Id.* at ¶¶ 12-13.)  Within a matter of hours of securing that warrant, dozens of "heavily armed officers and agents dressed in tactical gear" apparently "descended on Plaintiff's home in an otherwise quiet, residential neighborhood with military-style armored vehicles and with fully automatic weapons."  (*Id.* at ¶¶ 2, 13.)  This "raid" of Mr. Halik's home, which Mr. Halik describes as an "excessive force" incident, was reportedly "executed" by officers from the CSPD's SWAT team, known as the Tactical Enforcement Unit ["TEU"].[1]  (*Id.* at ¶¶ 2, 7, 13, 30.)  Mr. Halik reports that the TEU officers were "accompanied" by Officer Brewer, as well as unspecified "ATF agents."  (*Id.* at ¶ 15.)

According to the Complaint, after "illegally entering" Mr. Halik's home with the "unlawfully obtained state search warrant," the officers and agents proceeded to "meticulously search[] through every inch" of the residence, including a section of the property that "belonged" to Mr. Halik's roommate, who "was on a separate lease."  (*Id.* at ¶¶ 15, 17.)  Officer Brewer also apparently searched Mr. Halik's rental vehicle, which was locked and parked in the driveway, without Mr. Halik's consent.  (*Id.* at ¶ 19.)  Plaintiff alleges that, during the course of these

---

[1] According to the Complaint, the TEU is "a specialized section of the CSPD that has become increasingly militarized and uses specialized weapons and tactics to neutralize situations that it unilaterally deems 'high risk.'"  (Doc. No. 1 at ¶ 7.)

contested searches, law enforcement also "made defamatory statements" about him to his neighbors. (*Id.* at ¶ 13.) Mr. Halik complains that the officers and agents executing the warrant ultimately "ripped [his] home apart," and caused "extensive damage" to his property. (*Id.* at ¶ 15.) Plaintiff recounts one instance in which Officer Brewer, while searching through a bedroom, "dumped a miniature urn containing Plaintiff's father's ashes onto Plaintiff's desk." (*Id.* at ¶ 16.) Mr. Halik alleges that, during the search of his home, law enforcement illegally seized "tens of thousands of dollars" worth of his "belongings," including "numerous high-dollar computers and other digital media," which held "indisputable evidence of corruption" by unspecified El Paso County Sheriff's Office ["EPSO"] deputies. (*Id.* at ¶ 15.) Plaintiff firmly believes that these items were seized by "Defendant Brewer and his co-conspirators," in an attempt to "silence and oppress" him, as well as to "hid[e] or destroy[] the evidence that was to be used against the EPSO deputies." (*Id.*) Mr. Halik further alleges that, even though he was "being fully compliant with the law enforcement officers at the scene," and despite the fact that he did not have "any weapons or contraband on his person," the local SWAT team, at the "direction" of Officer Brewer, "strip searched [him] at gun point," and  "exposed [his] genitals." (*Id.* at ¶ 14.) Plaintiff claims that the strip search was done "against [his] will," and he alleges that it not only violated his "privacy" rights, but also "amounted to sexual assault and unlawful search and seizure." (*Id.*) Mr. Halik also alleges that his dog—"a highly trained service animal" for his unspecified "disabilities"— suffered "trauma" from witnessing these events, resulting in the dog's premature "retirement from disability service work," thereby depriving Mr. Halik of "the use of his medically necessary service animal." (*Id.* at ¶ 20.) Plaintiff complains that, even though "nothing illegal was discovered" from the search of his home, the CSPD, to date, has not "released any police reports" regarding the

incident. (*Id.* at ¶ 21.) Mr. Halik further alleges that "Defendant Brewer and the CSPD" have refused to return any of his seized property, or to provide him with "compensation" for items that were "essentially stolen" from him. (*Id.*)

Finally, Mr. Halik alleges that, since these events transpired, Officer Brewer has continued to engage in "extensive corruption and misconduct" to "frame" him and otherwise "violate" his "constitutional rights." (*Id.* at ¶ 10.) Mr. Halik alleges that Officer Brewer, together with "other officers" at his "direction," has "stalked and harassed" him "on an ongoing basis," as well as "threatened" his friends "with arrest," causing Mr. Halik "to slip into a deeper depression." (*Id.* at ¶ 22.) Plaintiff alleges that, in or around August of 2019, Officer Brewer "ignored" certain "clear and convincing evidence . . . of an individual conspiring to murder a law enforcement officer," and instead, "looked for a way to frame Plaintiff with those same crimes." (*Id.* at ¶ 23.) Mr. Halik likewise alleges that, after he recently commenced an unrelated federal lawsuit against EPSO deputies, Officer Brewer "confiscated" his "digital media" and "deleted" certain evidence relevant to the case, in an attempt to "retaliate" against him. (*Id.* at ¶ 24.)

Based on these allegations, on February 19, 2021, Mr. Halik commenced this federal civil rights action against Officer Brewer and the unknown officers from CSPD's SWAT team, in their individual and official capacities, asserting claims for violations of his Fourth, Fifth, and Fourteenth Amendment rights, as well as claims for "stalking, harassment, defamation, discrimination, and intentional infliction of emotional distress." (*Id.* at ¶¶ 36-37.) In the Complaint, Plaintiff requests an award of monetary damages, as well as unspecified declaratory, injunctive, and mandamus relief. (*Id.* at 16.)

Officer Brewer now moves to dismiss the Complaint, in its entirety, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. No. 6 at 3, 14-15.)

## STANDARDS OF REVIEW

### I. Pro Se *Plaintiff*

Plaintiff is proceeding *pro se*. The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding the allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (stating that a court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). The plaintiff's *pro se* status does not entitle him to an application of different rules. *Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

### II. *Federal Rule of Civil Procedure 12(b)(1)*

Federal Rule of Civil Procedure Rule 12(b)(1) empowers a court to dismiss a complaint for a lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is

not a judgment on the merits of a plaintiff's case.  Rather, it calls for a determination that the court

lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the

allegations of the complaint.  *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994)

(recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction

when specifically authorized to do so).  The burden of establishing subject matter jurisdiction is

on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir.

1974).  A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in

which it becomes apparent that jurisdiction is lacking." *Id.* at 909.  The dismissal is without

prejudice. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006).

A Rule 12(b)(1) Motion to Dismiss "must be determined from the allegations of fact in the

complaint, without regard to mere conclusionary allegations of jurisdiction." *Groundhog v.

Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).  When considering a Rule 12(b)(1) motion, however,

the Court may consider matters outside the pleadings without transforming the motion into one for

summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). If a party

challenges the facts upon which subject matter jurisdiction depends, a court may not presume the

truthfulness of the complaint's "factual allegations . . . [and it] has wide discretion to allow

affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve disputed

jurisdictional facts under Rule 12(b)(1)." *Id*.

### III.  Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a

claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties

might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a Motion to Dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a Motion to Dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the Motion to Dismiss. *Id*. at 679.

That being said, the court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'

Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

In evaluating a Rule 12(b)(6) Motion to Dismiss, the court typically may not look beyond the pleadings. *Casanova v. Ulibarri*, 595 F.3d 1120, 1125 (10th Cir. 2010). "If, on a motion under Rule 12(b)(6), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." *Johnson v. Spencer*, 950 F.3d 680, 705 (10th Cir. 2020) (quoting Fed. R. Civ. P. 12(d)) (alterations omitted). "Pleadings," for purposes of a Rule 12(b)(6) Motion to Dismiss, however, include attachments to the complaint, documents incorporated into the complaint by reference, and information subject to judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010); *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006). Documents attached to a Motion to Dismiss are considered part of the pleadings, if they are referred to in the complaint, central to the plaintiff's claims, and not challenged as inauthentic. *GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997); *accord Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 521 (10th Cir. 2013).

Here, Officer Brewer has attached litigation documents from Mr. Halik's prior criminal cases, including a 2013 plea agreement, a 2015 petition for modification of the conditions of his supervised release, and two state court docket sheets. (Doc. Nos. 6-1, 6-2, 6-3, 6-4.) However, the court has not relied on these documents in evaluating the Motion to Dismiss.

Defendant has also attached the February 19, 2019 search warrant and supporting affidavit. (Doc. No. 6-5.)  Mr. Halik does not appear to challenge the authenticity of these documents, both of which appear central to Mr. Halik's allegations that Defendant lied to obtain a state search warrant for his home.  (*See* Doc. No. 1 at ¶ 12; Doc. No. 19 at ¶ 4 (referring to these materials as "the actual warrant").)  Further, Mr. Halik specifically mentions both the search warrant and the affidavit several times within the Complaint.  (*See* Doc. No. 1 at ¶ 12 ("On or about the morning of February 20, 2019, Defendant Brewer knowingly lied on a sworn affidavit in order to unlawfully obtain a state search warrant for Plaintiff's home."), ¶ 15 ("Armed with the unlawfully obtained state search warrant, the Defendant TEU officers made entry into Plaintiff's home[.]").)  Therefore, the court will consider the search warrant and accompanying affidavit in ruling on the Motion to Dismiss.  *See Cuervo v. Salazar*, No. 20-cv-0671-WJM-GPG, 2021 WL 1534607, at *3 (D. Colo. April 19, 2021) (considering a search warrant and supporting affidavit submitted with a Motion to Dismiss, where the documents were referenced within the complaint, central to the plaintiff's claims, and not challenged as inauthentic); *see also Rathbun v. Montoya*, 628 F. App'x 988, 990 n.2 (10th Cir. 2015) (considering a Motion to Dismiss based on qualified immunity *de novo* and drawing "facts from the search warrant and the affidavit in support of the search warrant, both of which are referenced in the amended complaint").

Finally, Officer Brewer has submitted body worn camera ["bodycam"] video footage, purportedly showing the February 20, 2019 strip search of Mr. Halik that is at issue here.  (Doc. No. 6-7.)  In the Motion to Dismiss, Officer Brewer relies on the bodycam footage to argue that the strip search was objectively reasonable under the Fourth Amendment.  (Doc. No. 6 at 5-7.)  Officer Brewer argues that the video footage should be considered by the court, in connection with

the Motion to Dismiss, because Mr. Halik "refers to videos of the alleged strip search in the complaint as support for his version of events," the footage is "central to" Mr. Halik's claim that he was unreasonably strip searched "against [his] will," and Mr. Halik "cannot plausibly dispute the videos' authenticity." (*Id.* at 5 n.4.)

Upon careful review of the Complaint, the court finds one instance in which Mr. Halik references video footage:

> Despite Plaintiff being fully compliant with law enforcement officers at the scene, and despite Plaintiff not having any weapons or other contraband on his person, the Defendant TEU officers strip searched Plaintiff at gun point.   At Defendant Brewer's direction, the Defendant TEU officers unbuttoned and unzipped Plaintiff's pants, partially pulled down Plaintiff's pants and underwear, and exposed Plaintiff's genitals. . . . The[se] actions . . . w[ere] done against Plaintiff's will in the middle of the street in front of Plaintiff's residence in full view of Plaintiff's neighbors. . . . The[se] actions were also **captured by several video cameras**.

(Doc. No. 1 at ¶ 14) (emphasis added.)   While Mr. Halik does make passing reference to "video cameras," he does not specify whether he is referring to bodycam footage, nor does he describe what these "cameras" purportedly show.   Further, Mr. Halik does not appear to rely on the video footage as actual support for his claim that the strip search was unreasonable. *See Turner v. Garcia-Serna*, No. 20-cv-00281-CMA-KMT, 2021 WL 1186670, at *5 (D. Colo. Mar. 31, 2021) (declining to consider bodycam footage in connection with a Rule 12(b)(6) Motion to Dismiss, where the plaintiff mentioned bodycam footage in the complaint, but did not discuss its contents or rely on it to support his claims); *c.f. Pittman v. City of Aurora*, No. 19-cv-01947-PAB-NRN, 2020 WL 6586659, at *4 (D. Colo. Oct. 23, 2020) (considering officer bodycam footage attached to a Rule 12(b)(6) Motion to Dismiss, where the complaint referred to the footage as "support" for the plaintiff's claims, including by alleging that "[t]he officers' lapel cameras *clearly show* that

[the plaintiff] felt threatened, and was exhausted, scared, and humiliated throughout the process of the unlawful search and detention") (emphasis added); *see also Thomas v. City of Aurora*, No. 20-cv-03308-LTB-NYW, 2021 WL 5810742, at *4 (D. Colo. Dec. 7, 2021) (considering officers' bodycam footage attached to a Rule 12(b)(6) Motion to Dismiss, where the complaint quoted directly from the footage to show the plaintiff's entitlement to relief).   The court, therefore, declines to review or consider the video footage in its evaluation of the Motion to Dismiss.  *See Rustgi v. Reams*, 536 F. Supp. 3d 802, 813-14 (D. Colo. 2021) (declining to consider jail surveillance video footage in connection with a Rule 12(b)(6) Motion to Dismiss, even though the plaintiff embedded screenshots of the footage into his complaint, on the grounds that the consideration of such evidence would be "inappropriate for a proper Rule 12 sufficiency of the pleading analysis"); *see also Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998) (A court has "broad discretion in determining whether or not to accept materials beyond the pleadings").  The court likewise, in its discretion, declines to convert the Motion to Dismiss into a motion for summary judgment.  *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (holding that the district court erroneously relied upon matters outside of the pleadings in ruling on a Rule 12(b)(6) motion).

## ANALYSIS

### I.  *The* Bivens *Claims*

As an initial matter, the Complaint identifies Officer Brewer as "a police officer with the Colorado Springs Police Department," who is also "assigned to a task force with" the Bureau of Alcohol, Tobacco, and Firearms ["ATF"].  (Doc. No. 1 at ¶ 6.)  Mr. Halik states that "it is unknown if [Officer Brewer] was acting in the scope of federal employment or if he was acting under color

of state law at all times relevant to this litigation." (*Id.*)  Plaintiff alleges, for that reason, that Defendant "may be held accountable via 42 U.S.C. § 1983 or under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971)." (*Id.*)  In the Motion to Dismiss, Officer Brewer contends that he "was acting under color of state law at all times relevant to this litigation." (Doc. No. 6 at 2 n.2.)

To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Section 1983 provides no remedy for a deprivation of rights by federal officials acting under color of federal law. *Belhomme v. Widnall*, 127 F.3d 1214, 1217 (10th Cir. 1997).  Rather, federal agents are subject to liability, in an individual capacity, for violations of certain constitutionally protected rights under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009); *see Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006) (stating that, where *Bivens* applies, it is the "federal analog" to § 1983).

In this case, Defendant is alleged to be a municipal police officer who works on a federal ATF task force.  (Doc. No. 1 at ¶ 6.)  "Courts have consistently treated local law enforcement agents deputized as federal agents and acting as part of a federal task force as federal agents." *Colorado v. Nord*, 377 F. Supp. 2d 945, 949 (D. Colo. 2005) (citations omitted); *see, e.g.*, *United States v. Martin*, 163 F.3d 1212, 1214 (10th Cir. 1998) (concluding that a local police detective deputized to participate in a federal narcotics investigation was a federal officer within the meaning of 18 U.S.C. § 115(a)(1)(B)).  To the extent that Officer Brewer was a federal actor during the events in question, his claims would arise under *Bivens v. Six Unknown Named Agents of Federal*

*Bureau of Narcotics*, 403 U.S. 388 (1971).  *See Hamilton v. Givan*, No. 2:15-cv-02230-LSC-TMP, 2016 WL 8077985, at *1 n.1 (D. Colo. Dec. 13, 2016) (stating, in dicta, that constitutional claims against a municipal police officer who was also an "ATF Agent" would fall under *Bivens*, to the extent that the officer was a federal actor during the events in question).

However, even construing the Complaint liberally in Mr. Halik's favor, there are insufficient allegations for a factfinder to conclude that Officer Brewer was acting under color of federal law.  As the primary basis for his claims, Mr. Halik alleges that the CSPD's SWAT team, together with Officer Brewer, illegally entered his home, pursuant to an invalid state-issued search warrant, ultimately resulting in numerous violations of his constitutional rights.  (Doc. No. 1 at ¶¶ 2, 12-13.)  The search warrant shows that it was obtained by the Colorado Springs Police Department, and the affiant, Officer Brewer, is identified to be a CSPD detective.  (Doc. No. 6-5 at 1-2.)  Further, the search warrant affidavit states that it is predicated upon "information provided by officers and/or detectives with the Colorado Springs Police Department[.]"  (*Id.* at 3.)  While Mr. Halik alleges that federal ATF agents "accompanied" the local SWAT team in their execution of the search warrant, there are no allegations reasonably suggesting that the raid, or any other purported misconduct by law enforcement, was taken either at the behest of federal agents, or in connection with any federal purpose.  *See Couden v. Duffy*, 446 F.3d 483, 499 (3rd. Cir. 2006) (concluding that local police officers, all of whom were members of an FBI joint task force, were not acting under color of federal law when they initiated a traffic stop of the plaintiff, because nothing within the record suggested the officers took such action "on behalf of the federal government"); *Adams v. Springmeyer*, No. 11-790, 2012 WL 1865736, at *5-6 (W.D. Pa. May 22, 2012) (finding allegations sufficient to show that the defendant, who was the supervisor of a

13

"federal, state, or local task force," was acting under color of state law while executing an arrest warrant, where the warrant was reportedly "issued by a state court").

Therefore, because Plaintiff's present allegations are insufficient to show a basis for holding Officer Brewer liable under *Bivens*, this court respectfully **RECOMMENDS** that such claims be **DISMISSED**.

## II. The Section 1983 Claims

### A. The Individual Capacity Claims

Mr. Halik alleges that Officer Brewer violated his Fourth Amendment rights to be free of unreasonable searches and seizures, and that he also violated his due process rights under the Fifth and Fourteenth Amendments. (Doc. No. 1 at ¶¶ 36-37.) Defendant Brewer moves to dismiss these claims, under Rule 12(b)(6), contending that they are inadequately pleaded.[2] (Doc. No. 6 at 3-14.)

---

[2] In the Motion to Dismiss, Officer Brewer also invokes qualified immunity. (Doc. No. 6 at 3 & n.3.) "Qualified immunity is an affirmative defense to a section 1983 action, providing immunity from suit from the outset." *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001) (quoting *Adkins v. Rodriguez*, 59 F.3d 1034, 1036 (10th Cir. 1995)). "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Ullery v. Bradley*, 949 F.3d 1282, 1289 (10th Cir. 2020) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "In resolving a Motion to Dismiss based on qualified immunity, the court considers (1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of [the] defendant's alleged misconduct." *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013) (quoting *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011)) (internal quotation marks omitted). Here, Officer Brewer argues that he is entitled to qualified immunity, because the Complaint "fails to state a plausible constitutional violation claim." (Doc. No. 6 at 3.) However, Officer Brewer makes no argument concerning whether Mr. Halik's rights at issue were clearly established at the time of the alleged misconduct. As such, the analysis as to qualified immunity is limited to whether a cognizable constitutional right has been pleaded. *See Sayed v. Lt. Page Virginia*, No. 16-cv-2712-WJM-MJW, 2017 WL 5248048, at *4 & n.1, *aff'd in part, appeal dismissed in part sub nom. Sayed v. Virginia*, 744 F. App'x 542 (10th Cir. 2018) ("[B]ecause the Defendants mention the defense without engaging in the analysis, they have failed to raise the affirmative defense of qualified immunity."); *Kennedy v. Taylor*, No. 21-cv-0901-WJM-KMT, 2021 WL 6050279, at *2

### 1. *The Fourth Amendment Claims*

Mr. Halik alleges that Officer Brewer violated his Fourth Amendment rights, by lying in a search warrant affidavit; by illegally entering and searching through his home; by using excessive force to effectuate the search; by seizing and damaging his property; and by strip searching him. (Doc. No. 1 at ¶ 36.)

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures"  U.S. Const. Amend. IV. The "basic purpose of this Amendment" is "to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Camara v. Mun. Ct. of City & Cnty. of S.F.*, 387 U.S. 523, 528 (1967).  The "ultimate touchstone" for an analysis of the constitutionality of a search or seizure under the Fourth Amendment is reasonableness. *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006).  The reasonableness of a particular search or seizure depends upon whether, objectively, the challenged action was justified under the circumstances. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735-36 (2011).  The reasonableness inquiry "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotation marks omitted).

"The Fourth Amendment protects the individual's privacy in a variety of settings.  In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical

---

(D. Colo. Dec. 21, 2021) (declining to engage in a qualified immunity analysis at the Motion to Dismiss stage, where the defendants made no argument concerning the "clearly established" prong); *see also Meyer v. Bd. of Cnty. Comm'rs*, 482 F.3d 1232, 1242 (10th Cir. 2007) (admonishing that the court is "not charged with making the parties' arguments for them").

dimensions of an individual's home." *Payton v. New York*, 445 U.S. 573, 589 (1980). Consequently, "the sanctity of private dwellings [is] ordinarily afforded the most stringent Fourth Amendment protection." *United States v. Martinez-Fuerte*, 428 U.S. 543, 561 (1976). Government entry into a private home is therefore permitted only under limited circumstances. *Id.* Where permitted, the degree of intrusiveness must be minimized. *Kyllo v. United States*, 533 U.S. 27, 35 (2001). The primary safeguard against unwarranted or overly intrusive government entry into private homes is the warrant procedure of the Fourth Amendment. *Payton*, 445 U.S. at 583.

The Fourth Amendment mandates that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. "Probable cause to issue a search warrant exists when the supporting affidavit sets forth sufficient facts that would lead a prudent person to believe that a search of the described premises would uncover contraband or evidence of a crime." *United States v. Sanchez*, 725 F.3d 1243, 1247 (10th Cir. 2013) (citation omitted). Typically, a search or seizure requires a warrant based on probable cause to comply with the Fourth Amendment. *Jones v. Hunt*, 410 F.3d 1221, 1227 (10th Cir. 2005) (citing *Camara*, 387 U.S. at 528-29); *accord Illinois v. Gates*, 462 U.S. 213, 239 (1983). Further, "[t]he Fourth Amendment's prohibition against unreasonable searches and seizures has always been interpreted to prevent a search that is not limited to the particularly described 'place to be searched, and the persons or things to be seized.'" *Florida v. Royer*, 460 U.S. 491, 499 (1983). "Neutral, detached judicial officers decide the scope of a warrant; the determination is not left to the discretion of the law enforcement officers who execute it." *Robinson v. City & Cnty. of Denver*, 39 F. Supp. 2d 1257, 1266-67 (D. Colo. 1999) (citing *Payton*, 445 U.S. at 586 n.24). "Searches conducted without a

warrant are per se unreasonable under the Fourth Amendment – subject only to a few 'specifically established and well-delineated exceptions.'" *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1248 (10th Cir. 2003) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).

### a. Search Warrant Affidavit

The Complaint alleges that Officer Brewer "knowingly lied on a sworn affidavit to in order to unlawfully obtain a state search warrant to Plaintiff's home." (Doc. No. 1 at ¶ 12.) Fourth Amendment liability may arise "based on material misstatements or omissions in warrant-seeking affidavits, probable cause statements, and similar written submissions." *Hinman v. Joyce*, 201 F. Supp. 3d 1283, 1294 (D. Colo. 2016) (citing *Rehberg v. Paulk*, 566 U.S. 356, 370 n.1 (2012)). To prevail on such a claim, Mr. Halik must show that: (1) "the affiant made a false statement knowingly and intentionally, or with reckless disregard for the truth;" and (2) "absent the false statement, the affidavit's remaining content is insufficient to establish probable cause." *United States v. Sanchez*, 725 F.3d 1247 (10th Cir. 2013) (quoting *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)).

Here, the Complaint is devoid of a sufficient factual basis from which to evaluate whether any purportedly false statement made by Officer Brewer within the search warrant affidavit was "necessary to the finding of probable cause." *Franks*, 438 U.S. at 171. Indeed, Plaintiff fails to even explain what portions of the search warrant affidavit that he deems to be untrue.[3] Without

---

[3] In his Response, Mr. Halik attempts to bolster his claim by arguing that Officer Brewer "knew" that the allegation "of Plaintiff apparently possessing guns and shooting a person multiple times at close range in public . . . was entirely false and he nevertheless included it in his affidavit." (Doc. No. 19 at ¶ 5(b).) However, these allegations are not found within the four corners of the Complaint. *See Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995) ("[I]n determining whether to grant a Motion to Dismiss, the district court . . . [is] limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint."); *Ramsey v. Sw. Corr. Med.*

such allegations, Plaintiff has failed to state a plausible Fourth Amendment claim arising from Defendant Brewer's search warrant affidavit. *See Estate of Redd v. Love*, 62 F. Supp. 3d 1268, 1274 (D. Utah 2014) (finding no plausibly alleged Fourth Amendment violation arising out of a "false" warrant application, where the complaint "failed to mention the contents of the warrant or the contents of the warrant affidavit"); *Schmier v. City of Colo. Springs*, No. 10-cv-02297-BNB, 2011 WL 334559, at *2 (D. Colo. Jan. 31, 2011) (dismissing a Fourth Amendment claim relating to an arrest warrant, where the plaintiff alleged that there was no probable cause to support the issuance of the warrant, but failed to allege that the defendants knowingly or recklessly made false statements or omitted information in their affidavits which vitiated probable cause); *Allen v. Cunningham*, 51 F.3d 285 (table), 1995 WL 143130, at *5 (10th Cir. 1995) ("While it is clearly in violation of the Fourth Amendment to base a search warrant on false information, the Plaintiff fails to allege which Defendants gave what false information, let alone prove that there was any false information."); *Rawlings v. City of Fountain, Colo.*, No. 17-cv-01980-RM-KLM, 2018 WL 3375191, at *3 (D. Colo. July 10, 2018) (recommending the dismissal of Fourth Amendment search and seizure claims, as inadequately pleaded, where the plaintiff "offered only conclusory statements regarding the lack of probable cause and bad faith of [the police officer] in obtaining the warrant"). It is, therefore, respectfully **RECOMMENDED** that this claim be **DISMISSED**.

---

*Grp., Inc.*, No. 18-cv-1845-WJM-KLM, 2019 WL 3252181, at *10 (D. Colo. Jul. 19, 2019) ("[A] plaintiff cannot avoid dismissal by adding new allegations in a response brief[.]"). And, even if they were, Plaintiff still fails to allege that, without such information, "the affidavit's remaining content is insufficient to establish probable cause." *Sanchez*, 725 F.3d at 1247.

### b. The Search of Mr. Halik's Home

Mr. Halik next alleges that the February 20, 2019 "raid" of his home violated his Fourth Amendment rights, because the underlying search warrant was invalid.  (Doc. No. 1 at ¶¶ 15, 36.)  However, this claim appears to be predicated exclusively upon Mr. Halik's allegation that Officer Brewer "knowingly lied" to obtain the search warrant.  (*Id.* at ¶ 12.)  Indeed, the Complaint is devoid of any additional allegations concerning the warrant's validity.[4]  Given that Plaintiff has failed to plausibly allege that Officer Brewer made material misrepresentations within the warrant affidavit, to the extent that Plaintiff alleges that the resulting search of his home was illegal, his claim also fails.[5]  *See Estate of Redd*, 62 F. Supp. 3d at 1274-75 (finding allegations—that "the illegal warrant obtained by [the defendant] resulted in the illegal search of [the plaintiff]'s residence—insufficient to state a Fourth Amendment claim, where the plaintiff failed to plausibly allege that the defendant "provided false information in his warrant application").  Thus, this court respectfully **RECOMMENDS** that Plaintiff's Fourth Amendment claim based on an illegal search of his premises be **DISMISSED**.

---

[4] In his Response, Mr. Halik argues that portions of the search warrant authorizing the search of his rental vehicle were "overly broad and unconstitutional."  (Doc. No. 19 at ¶ 4.)  These allegations are not found within the Complaint.  *Jojola*, 55 F.3d at 494.

[5] Mr. Halik appears to argue, in his Response, that the search warrant lacked probable cause, based on the fact that the resulting search of his home yielded "no weapons, ammunition, or any contraband of any kind."  (Doc. No. 19 at ¶ 6.)  However, "probable cause to obtain a search warrant is based on a showing of a reasonable degree of suspicion that the suspected items will be found – not an actual showing that such items will be found."  *Breidenbach v. Bolish*, 126 F.3d 1288, 2393 (10th Cir. 1997), *abrogated on other grounds by Currier v. Doran*, 242 F.3d 905, 916 (10th Cir. 2001).

### c. The Search of the Roommate's Separate Premises

The Complaint alleges that Officer Brewer unlawfully searched a portion of Mr. Halik's home that "belonged to" his roommate. (Doc. No. 1 at ¶ 17.) Plaintiff alleges that Officer Brewer "knew" that his roommate "was on a separate lease," but "still searched that area despite having no lawful purpose to do so." (*Id.*) For the reasons stated below, any claim based on the search of Plaintiff's roommate's separate premises is not viable.

First, a § 1983 plaintiff cannot recover damages for violations of another person's constitutional rights. *Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990) (Courts must "keep firmly in mind the well-settled principle that a section 1983 claim must be based upon the violation of plaintiff's personal rights, and not the rights of someone else."). Mr. Halik's roommate is not a plaintiff to this action. Therefore, to the extent that Plaintiff alleges a Fourth Amendment claim arising from the search of his roommate's separate portion of the residence, he has failed to plausibly do so. *See United States v. Holt*, No. 17-cv-1901-WJM, 2019 WL 193646, at *15 (D. Colo. Jan. 14, 2019) (holding that the defendant's status, "whether as a visitor, guest, resident, or something else," did not limit law enforcement's power to search the entire house, "given that the search warrant authorized as much").

Second, the search of Mr. Halik's home, including the portion purportedly belonging to his roommate, was conducted pursuant to the search warrant. The search warrant identifies Mr. Halik's home to be a "[s]ingle family two story residence." (Doc. No. 6-5 at 1.) "Only when police know beforehand that a residence is a multi-unit residence must the police specify in a warrant application which portion of the residence they intend to search." *Holt*, 2019 WL 193646, at *14 (citing 2 Wayne R. LeFave, *Search & Seizure* § 4.5(b) nn. 72-78 and accompanying text

(5th ed., Oct. 2018 update)).  "If police enter and then realize that what appeared to be a single residence is actually multiple residences[,] . . . the police may press forward with a search as authorized in the warrant, including rooms claimed by non-owners."  *Id.*

Here, on its face, the search warrant authorized law enforcement to enter Mr. Halik's residence and to search the "premises, location and any appurtenances thereto."  (Doc. No. 6-5 at 1.)  As discussed above, Mr. Halik has not alleged sufficient facts for a factfinder to conclude that the warrant was secured based on false statements.  *See supra.*  Moreover, aside from conclusory assertions, that Officer Brewer "knew" that Mr. Halik's roommate was on a separate lease, the Complaint is devoid of any allegations reasonably suggesting that Officer Brewer was aware, prior to the search, that a portion of the residence belonged exclusively to Mr. Halik's roommate.  Nor does Plaintiff allege that the roommate's premises was marked, locked or rendered inaccessible in such a way as to alert Defendant that that portion of the residence constituted separate living quarters.  Accordingly, this court respectfully **RECOMMENDS** that this claim be **DISMISSED**.

### d.  The Search of the Rental Vehicle

Mr. Halik next alleges that Officer Brewer unlawfully searched his rental vehicle, which was "locked and parked" in the driveway of his residence.  (Doc. No. 1 at ¶ 19.)  Plaintiff alleges that the search was conducted without his permission, and he states that "no warrant for the vehicle was presented" at the time of the search.  (*Id.*)  However, the search warrant authorizing the search of Mr. Halik's home expressly permits the search of  "[a]ny . . . vehicles . . . located on the property."  (Doc. No. 6-5 at 10.)  As such, Officer Brewer was not required to obtain Mr. Halik's consent to conduct that search.  To the extent that Mr. Halik alleges that Officer Brewer failed to present a copy of the warrant prior to searching the rental vehicle, there is no constitutional

requirement to do so. *See United States v. Grubbs*, 547 U.S. 90, 97-99 (2006) (holding that a warrant need only identify the place to be searched and the persons or things to be seized, and making clear that the Fourth Amendment does not require "the executing officer [to] present the property owner with a copy of the warrant before conducting his search"). Accordingly, this court respectfully **RECOMMENDS** that claim be **DISMISSED** as well.

### e. The Search of the Urn

The Complaint alleges that, during the course of their search, law enforcement officers "ripped Plaintiff's home apart, thereby causing extensive damage." (Doc. No. 1 at ¶ 15.) Mr. Halik complains, specifically, that Officer Brewer at one point "dumped a miniature urn containing [his] father's ashes onto [a] desk." (*Id.* at ¶ 16.) Plaintiff states that the urn "was a sealed container," which "did not contain any contraband, nor could it have contained contraband or evidence relevant to the search." (*Id.*)

It is unclear from the Complaint whether Mr. Halik challenges the basis for Officer Brewer's search of the miniature urn, or the manner in which that search was conducted. To the extent that Plaintiff claims that the search of the urn itself was not justified, the underlying search warrant authorized the search for, and seizure of, small items such as "ammunition," "spent shell casings," "safe deposit box keys," police "badges," and "data storage" equipment. (Doc. No. 6-5 at 10.) Further, the warrant affidavit states that "those who illegally possess weapons will frequently hide ownership or purchase records as well as ammunition in small containers and boxes." (*Id.* at 8.) Given that the search of the miniature urn fell within the scope of the warrant, this court finds that Plaintiff has failed to allege sufficient facts to conclude that the search was not supported by probable cause. *See Lawmaster v. Ward*, 125 F.3d 1341, 1348 (10th Cir. 1997)

("Agents conducting a search are entitled to rely, in good faith, on a magistrate's determination of probable cause.").

However, Mr. Halik appears also to allege that the manner in which the search of the urn was conducted was unconstitutional. "The Fourth Amendment requires examination of not only whether a particular search or seizure was justified, but whether it was conducted in a reasonable manner." *Whitewater v. Goss*, 192 F. App'x 794, 797 (10th Cir. 2006) (citing *Tennessee v. Garner*, 471 U.S. 1, 7-8 (1985)); *United States v. Hargus*, 128 F.3d 1358, 1363 (10th Cir. 1997) ("The officers' conduct in executing a search warrant is governed by the Fourth Amendment's mandate of reasonableness from the moment they step into the house until the moment they leave."). The "[e]xcessive or unnecessary destruction of property in the course of a search" is sometimes, though not always, a violation of the Fourth Amendment. *United States v. Ramirez*, 523 U.S. 65, 71 (1988); *see Dalia v. United States*, 441 U.S. 238, 258 (1979) ("[O]fficers executing search warrants on occasion must damage property in order to perform their duty."); *United States v. Mendoza*, 817 F.3d 695, 703 (10th Cir. 2016) ("The destruction of property in carrying out a search is not favored, but it does not necessarily violate the Fourth Amendment; the standard is reasonableness."). "[C]ourts determine the lawfulness of damaging or destroying property in executing a warrant by assessing the reasonableness of the police conduct." *Mendoza*, 817 F.3d at 703 (citing *Ramirez*, 523 U.S. at 71). This is a fact-specific inquiry, "requir[ing] careful attention to the facts and circumstances of each particular case." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Here, it is alleged that Officer Brewer unceremoniously "dumped a miniature urn containing Plaintiff's father's ashes onto Plaintiff's desk." (Doc. No. 1 at ¶ 16.) Taking all

allegations as true and drawing all inferences in favor of Mr. Halik, the court cannot say, at this stage of the proceedings, that the manner in which this particular search was conducted was not unreasonable.  As such, this claim should be allowed to proceed.  *See Stuckey v. Wilson*, No. 1:08-CV-00184, 2008 WL 11351365, at *3 (S.D. Ohio Aug. 4, 2008) (finding a viable Fourth Amendment claim arising from the manner in which officers searched the plaintiffs' "cremation urn," where it was "undisputed that officers searched the cremation urn, and that after the search the ashes went missing"); *see also Cuervo v. Salazar*, No. 20-cv-0671-WJM-GPG, 2021 WL 1534607, at *7 & n.10 (D. Colo. April 19, 2021) (stating in dicta that the resolution of Fourth Amendment claims pertaining to the manner in which the search was conducted are "more appropriate for summary judgment").  Thus, this court respectfully **RECOMMENDS** that Defendants' Motion to Dismiss be **DENIED** as to this claim.

### f.  The Seizure of Mr. Halik's Computers and Digital Media

The Fourth Amendment, by its terms, protects against the unreasonable seizure of property.  "A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property."  *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).  If "meaningful interference" took place, the question becomes whether such interference was reasonable, judged by "balanc[ing] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion."  *Tennessee v. Garner*, 471 U.S. 1, 7-8 (1985).  The reasonableness of a seizure depends not only upon "when a seizure is made, but also how it is carried out.  *Id.* at 8.

Here, Mr. Halik challenges the seizure of his "numerous high-dollar computers and other digital media."  (Doc. No. 1 at ¶ 15.)  Plaintiff alleges that Officer Brewer took these items, and

then later unlawfully searched through their contents, for no reason other than to "silence and oppress" him.  (*Id.*)  However, as Defendant points out, the underlying search warrant directed law enforcement officers to search and/or seize items relating to "[i]ndicia of ownership of vehicle," "data storage," and "[a]ny computers that could be used to produce documents like described in the attached affidavit."  (Doc. No. 6-5 at 10.)  Mr. Halik's allegations regarding Officer Brewer's motives for seizing these items are speculative, at best.  Therefore, because the seizure of Mr. Halik's "computers and other digital media" fell within the scope of the search warrant, and in the absence of any allegations reasonably suggesting that the manner of their search and/or seizure was unlawful, the Fourth Amendment claim relating to the search and seizure of those items should be dismissed.  *See  Gilpin v. Clovis Police Dep't*, No. Civ. 11-336 LH/LAM, 2012 WL 13081262, at *10 (D.N.M. Feb. 27, 2012) (dismissing § 1983 claims alleging an illegal search, where the complaint did not allege that the warrant or the manner of its execution was unlawful).

### g.  The Deployment of the SWAT Team

Mr. Halik also alleges that the deployment of the TEU to execute the search warrant violated the Fourth Amendment's prohibition against excessive force.  (Doc. No. 1 at ¶ 30.)

The Tenth Circuit has made clear that Fourth Amendment scrutiny extends to the decision to employ a SWAT team, such as the TEU, to conduct a search of a residence.  *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1190-91 (10th Cir. 2001).  "[T]he decision to deploy a SWAT team to execute a warrant must be 'reasonable' because it largely determines how the seizure is carried out, thereby determining the extent of the intrusion on the individual's Fourth Amendment interests."  *Id.* at 1190 (citing *Garner*, 471 U.S. at 8).  However, "the mere decision to deploy a SWAT team, even under a blanket rule, does not offend the Fourth Amendment."

*Whitewater v. Goss*, 192 F. App'x 794, 798 (10th Cir. 2006).  Rather, to be actionable under the Fourth Amendment, the facts surrounding the planning of the SWAT team's deployment must show that decisionmakers either (1) "decided to use the SWAT team knowing that the SWAT team would use excessive force, intending to cause harm to any person;" or (2) "instructed the team to use excessive force."  *Holland*, 268 F.3d at 1191.

The search warrant executed in this case sought evidence of unlawfully possessed firearms and other weapons, including those used in the commission of crimes.  (Doc. No. 6-5 at 1-10.) The suspect, Mr. Halik, was a convicted felon with a known propensity for violence, who had been "prohibited from purchasing and/or possessing firearms since 12/14/2017."  (*Id.* at 8.)  Mr. Halik was reported to possess "a Glock brand firearm" and to have "guns in his residence and vehicles," including "a real submachine gun."  (*Id.* at 5, 7.)  Given these circumstances, law enforcement "had ample reason to believe that they were entering a hostile environment."  *Estate of Redd ex rel. Redd v. Love*, 848 F.3d 899, 909 (10th Cir. 2017) (finding the decision to deploy a SWAT team to effect the search of an arrestee's home to be reasonable, where there had been a history of tension and violence between federal authorities and residents of the arrestee's community). Moreover, the Complaint is devoid of any allegations reasonably suggesting that Officer Brewer, or any other purported decisionmaker, planned to deploy the TEU with "specific intent to cause harm through the use of excessive force."  *Holland*, 268 F.3d at 1190.  In his Complaint, Mr. Halik recounts numerous reasons why he believes it "implausible or impossible" that Officer Brewer or the TEU officers "actually believed" that they would be facing "a high-risk situation that legitimately called for the deployment of the TEU."  (Doc. No. 1 at ¶ 30.)  But even accepting Mr. Halik's assertions as true, the Tenth Circuit has repeatedly upheld the use of a SWAT team in

circumstances where the necessity of doing so is less apparent than here.  *See, e.g.*, *Holland*, 268 F.3d at 1191 (holding that the decision to deploy a SWAT team to conduct a search for evidence of a misdemeanor did not violate the Fourth Amendment, where the officers executing the warrant expected to encounter several persons in addition to the suspect and believed that there would be firearms within the residence); *Ealum v. Schirard*, 46 F. App'x 587, 595 (10th Cir. 2002) (holding the decision to deploy SWAT team to be reasonable, even though law enforcement knew that there would be children present, given that law enforcement also knew that "there was an adult in the residence and that some years earlier there were firearms and body armor in the residence"); *see also Santistevan v. City of Colo. Springs*, 983 F. Supp. 2d 1295, 1319 (D. Colo. 2013) (observing that there are "no cases in which the Tenth Circuit has found that the deployment of a SWAT team to execute a search warrant amounted to excessive force").  Therefore, because there are no facts reasonably suggesting that the use of the TEU in this case was unreasonable, this court respectfully **RECOMMENDS** that this claim be **DISMISSED**.

### h.  The Strip Search

Mr. Halik also alleges that he was subjected to an unreasonable strip search, in violation of his Fourth Amendment rights.  (Doc. No. 1 at ¶ 14.)

"It is axiomatic that a strip search represents a serious intrusion upon personal rights." *Chapman v. Nichols*, 989 F.2d 393, 395 (10th Cir. 1993); *see Boren v. Deland*, 958 F.2d 987, 988 n.1 (10th Cir. 1992) ("[A] strip search, regardless how professionally and courteously conducted, is an embarrassing and humiliating experience.").  "In a civilized society, one's anatomy is draped with constitutional protections."  *Shroff v. Spellman*, 604 F.3d 1179, 1191 (10th Cir. 2010) (quoting *United States v. Afanador*, 567 F.2d 1325, 1331 (5th Cir. 1978)).

In evaluating whether a strip search complies with the Fourth Amendment, "the court must balance the need for the search against the grave invasion of privacy that it entails." *Cottrell v. Kaysville City, Utah*, 994 F.2d 730, 734 (10th Cir. 1993) (citing *Chapman*, 989 F.2d at 395-96); *see also Levoy v. Mills*, 788 F.2d 1437, 1439 (10th Cir. 1986) ("[T]he greater the intrusion, the greater must be the reason for conducting a search."). Relevant factors to this inquiry include the manner in which the strip search was conducted, the justification for initiating it, and the place where the strip search took place. *Wolfish*, 441 U.S. at 559. The test is fact-specific, "measured in objective terms by examining the totality of the circumstances." *Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000) (quoting *Ohio v. Robinette*, 519 U.S. 33, 39 (1996)).

Here, the Complaint alleges that unknown TEU officers, "[a]t Defendant Brewer's direction," forcibly strip searched Plaintiff "at gun point" and "against [his] will," by "unbutton[ing] and unzip[ing] [his] pants, partially pull[ing] down [his] pants and underwear, and expos[ing] [his] genitals." (Doc. No. 1 at ¶ 14.) The Complaint makes clear that the strip search was performed during daylight hours, and "in the middle of the street in front of [Mr. Halik]'s residence in full view of [his] neighbors." (*Id.*) It is alleged that Officer Brewer lacked any justification for conducting the strip search, due to the fact that Mr. Halik "was being fully compliant with the law enforcement officers at the scene," and because Mr. Halik did not have "any weapons or other contraband on his person." (*Id.*) Taking these allegations as true, the Complaint plausibly suggests that the strip search violated Mr. Halik's Fourth Amendment rights. *See Campbell v. Miller*, 499 F.3d 711, 715, 718 (7th Cir. 2007) (holding a strip search that was conducted in the backyard of a house while a person inside the house watched from the window to be constitutionally unreasonable); *United States v. Ford*, 232 F. Supp. 2d 625, 630-31 (E.D. Va.

2002) (holding a strip search that was conducted "in broad daylight on the side of the George Washington Parkway, a heavily traveled roadway, at approximately 7:23 p.m., at the tail end of rush hour" to violate the Fourth Amendment); *see also Nelson v. McMullen*, 207 F.3d 1202, 1207 (10th Cir. 2000) ("[W]e cannot conceive of a set of circumstances allowing us to condone as reasonable an officer-imposed strip search in a public area such as a city street in the middle of the afternoon."); *Denson v. Rios*, No. 19-cv-00233-CMA-STV, 2019 WL 7161695, at *8-9 (D. Colo. Dec. 23, 2019) (finding a plausibly alleged Fourth Amendment claim, where a prison inmate alleged that "he alone was singled out for multiple visual body cavity searches because of a prison guard's individualized, retaliatory motive"); *c.f. Hyberg v. Enslow*, 801 F. App'x 647, 650-51 (10th Cir. 2020) (holding an inmate's allegations—that prison guards strip searched him "in a very demeaning and derogatory way"—to be insufficient to state a claim under the Fourth Amendment, where the complaint made clear that the strip searches "were conducted in a uniform manner, following routine protocol, in a designated area with limited access for other inmates and staff").

In the Motion to Dismiss, Officer Brewer argues that police bodycam footage of the incident in question unequivocally shows that, contrary to Mr. Halik's assertions, the strip search was performed with Mr. Halik's "consent and cooperation."  (Doc. No. 6 at 5.)  Officer Brewer likewise argues that this evidence proves that the decision to effect the strip search was "justified," and that "the scope and manner of the search" was "reasonable."  (*Id.* at 5-7.)  Mr. Halik, in his Response, disputes what the submitted bodycam footage actually depicts, and also raises concerns as to its "authenticity."  (Doc. No. 19 at ¶ 2.)  Plaintiff further states that he "has not actually seen the videos in their original form[.]"  (*Id.* at ¶ 2(h) n.1.)

Having carefully considered the parties' respective arguments, the court does not find the resolution of Mr. Halik's strip search claim to be appropriate at this stage of the proceedings.  The parties essentially ask the court to resolve contested issues of material fact, something that the court cannot do on a Rule 12(b)(6) Motion to Dismiss.[6]  *See Cottrell*, 994 F.2d at 735 (denying a motion for summary judgment on a Fourth Amendment unreasonable strip search claim, where the record was unclear as to where the strip search took place and the circumstances under which it occurred.  Therefore, because Plaintiff's allegations plausibly demonstrate a violation of his Fourth Amendment rights arising from the strip search, this court respectfully **RECOMMENDS** that Defendant's Motion to Dismiss that claim be **DENIED**.[7]

### 2. The Fifth Amendment Claims

In the Complaint, Plaintiff alleges due process violations under the Fifth Amendment. (Doc. No. 1 at ¶ 37.)  However, the Fifth Amendment's Due Process Clause is applicable to the federal government only, not to the individual states.  *Dusenbery v. United States*, 534 U.S. 161, 167 (2002); *Ward v. Anderson*, 494 F.3d 929, 932 n.3 (10th Cir. 2007) (noting that "only the Fourteenth Amendment imposes a due process requirement on state officials").  As discussed

---

[6] As explained *supra*, the court declines to review or consider the bodycam footage to resolve Defendant's Motion to Dismiss, because the footage is not a part of Plaintiff's pleadings.  *Cf. Est. of Ronquillo by & through Est. of Sanchez v. City & Cty. of Denver*, No. 16-CV-01664-CMA-KMT, 2016 WL 10843787, at *2 (D. Colo. Nov. 17, 2016), *aff'd*, 720 F. App'x 434 (10th Cir. 2017) (considering video footage from the body worn camera where the plaintiff incorporated the video recording into the complaint by reference, filed it with the court, refers to it repeatedly throughout the complaint and neither side appeared to challenge its authenticity).

[7] In his Reply, Officer Brewer argues, for the first time, that the Complaint fails to allege his personal participation in the strip search incident.  (Doc. No. 23 at 8.)  Regardless of how "compelling" this argument may be, the court declines to consider issues raised for the first time in a Reply brief.  *Sadeghi v. I.N.S.*, 40 F.3d 1139, 1143 (10th Cir. 1994).

*supra*, the Complaint's allegations do not plausibly show that Officer Brewer was acting under color of federal law at the time of the events in question.  As such, the Fifth Amendment does not apply.  *See Wilson v. City of Lafayette*, No. 07-cv-01844-EWN-KLM, 2008 WL 4197742, at *6 (D. Colo. Sept. 10, 2008) (dismissing Fifth Amendment due process claims, where the plaintiff averred no facts relating to the federal government).

Plaintiff also alleges that "[n]o compensation has been provided for any of the property that was essentially stolen from [him] by Defendants."  (Doc. No. 1 at ¶ 21.)  To the extent that Mr. Halik is alleging an unlawful taking under the Fifth Amendment, this claim also fails.  Specifically, Mr. Halik has not alleged any facts showing that his property was taken for public use.  *See Lech v. Jackson*, 791 F. App'x 711, 714 (10th Cir. 2019) ("[W]hen the state acts pursuant to its police power, rather than the power of eminent domain, its actions do not constitute a taking for purposes of the Takings Clause."); *Cuervo v. Salazar*, No. 20-cv-0671-WJM-GPG, 2021 WL 1534607, at *9 (D. Colo. April 19, 2021) (finding no viable Fifth Amendment takings claim arising from the defendants' purported destruction of the plaintiff's property while executing a search warrant, where the complaint was devoid of any allegations suggesting the defendants' action operated to convert the property to public use).  Accordingly, this court respectfully **RECOMMENDS** that Plaintiff's Fifth Amendment claim be **DISMISSED**.

### 3.  The Fourteenth Amendment Claims

The Complaint alleges violations of Mr. Halik's due process rights under the Fourteenth Amendment.  (Doc. No. 1 at ¶ 37.)  The Fourteenth Amendment provides: "No State shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV.  The Fourteenth Amendment's Due Process Clause encompasses two distinct forms of

31

protection: (1) procedural due process, which requires a state to employ fair procedures when depriving a person of a protected interest; and (2) substantive due process, which guarantees that a state cannot deprive a person of a protected interest for certain reasons. *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998) (citation omitted).  In his Complaint, Plaintiff appears to allege both procedural and substantive due process violations.

### a. Substantive Due Process

"Claims for 'substantive due process' find their basis in the Fourteenth Amendment's protections against arbitrary government power." *Lindsey v. Hyler*, 918 F.3d 1109, 1115 (10th Cir. 2019) (citing *Browder v. City of Albuquerque*, 787 F.3d 1076, 1078-80 (10th Cir. 2015)).  A substantive due process violation can be established by either: (1) "legislative acts that infringe on a fundamental right;" or (2) "official conduct that deprives a person of life, liberty, or property in a manner so arbitrary as to shock the judicial conscience." *Id.* (citation omitted).  "To succeed on such a claim, an individual must demonstrate that the government deprived him of life, liberty, or property without due process of law." *Id.* (citing *Browder*, 787 F.3d at 1078).

Read liberally, the Complaint also challenges the conduct of Officer Brewer (and other unnamed officers) subsequent to the February 20, 2019 search of Mr. Halik's home.[8]  Mr. Halik

---

[8] To the extent that Plaintiff seeks redress for alleged misconduct that occurred during the purportedly unlawful searches and seizures, including the strip search incident, those claims are governed by the Fourth Amendment, not the Fourteenth Amendment. *See Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, . . . must be the guide for analyzing these claims.") (internal quotation marks and citation omitted); *Grove v. McGill*, No. 12-cv-01539-REB-CBS, 2013 WL 5183898, at *4 (D. Colo. Sept. 16, 2013) (dismissing a Fourteenth Amendment substantive due process claim arising out of the allegedly illegal search and seizure of the plaintiff's property, and observing that such claim are "properly analyzed under the reasonableness standard of the Fourth Amendment, rather than the Fourteenth Amendment").

alleges that Officer Brewer has "stalked and harassed" him "on an ongoing basis," destroyed Mr. Halik's "incriminating evidence against EPSO deputies" relating to a separate civil rights lawsuit, and sought to "frame" him for crimes that he did not commit.[9] (Doc. No. 1 at ¶¶ 22-24.) Officer Brewer, in his Motion to Dismiss, does not address whether these claims are adequately pleaded, at all. (Doc. No. 6; Doc. No. 23.) Therefore, Mr. Halik's substantive due process claims, which do not arise from the contested searches and seizures remain viable and this court respectfully **RECOMMENDS** that the Motion to Dismiss be **DENIED** as to such claim.

### b. *Procedural Due Process*

"Procedural due process ensures that individuals are entitled to certain procedural safeguards before a state can deprive them of life, liberty or property." *Becker*, 494 F.3d at 918 n.8 (citing *Albright*, 510 U.S. at 275). "To set forth an actionable procedural due process claim, a plaintiff must demonstrate: (1) the deprivation of a liberty or property interest and (2) that no due process of law was afforded." *Ripley v. Wyo. Med. Ctr., Inc.*, 559 F.3d 1119, 1122 (10th Cir. 2009) (quoting *Stears v. Sheridan Cnty. Mem'l Hosp. Bd. of Trs.*, 491 F.3d 1160, 1162 (10th Cir. 2007)).

In the Complaint, Mr. Halik alleges that, to date, Officer Brewer has refused to return, or to provide him with compensation for, any of the property that was seized from his home on February 20, 2019. (Doc. No. 1 at ¶ 21.) Officer Brewer moves to dismiss this claim, on the grounds that Mr. Halik has failed to identify any procedural safeguard at issue. (Doc. No. 6 at 14.) The court respectfully agrees. Although Plaintiff unquestionably has a property interest in the seized items that "lawfully belong[]" to him, to state a procedural due process claim, he must set

---

[9] Mr. Halik also alleges that Defendant "systematically hunted down" his friends and "threatened" them with arrest. (Doc. No. 1 at ¶ 22.)

forth specific federal, state, or constitutional procedural safeguards that Defendant allegedly violated. *See Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 519-20 (10th Cir. 1998) (observing that procedural due process claim must set forth procedures due under law). Absent allegations that Officer Brewer violated applicable procedural safeguards, Plaintiff cannot state a claim for violation of his procedural due process rights. *See Peters v. Okla. Dep't of Corrs.*, No. CIV-18-144-G, 2019 WL 1338416, at *5 (W.D. Okla. Mar. 25, 2019) (finding allegations insufficient to state a Fourteenth Amendment procedural due process claim, where the complaint did not allege "which procedural safeguards were rendered inadequate"). Thus, this court respectfully **RECOMMENDS** that Defendants' Motion to Dismiss as to any procedural due process claim be **GRANTED**.

### B. The Official Capacity Claims

#### 1. Eleventh Amendment Immunity

Mr. Halik asserts § 1983 claims against Officer Brewer, in his official capacity, requesting both monetary damages and equitable relief. The Eleventh Amendment to the United States Constitution states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. It has been interpreted to bar a suit by a citizen against the citizen's own state in federal court. *Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995). Suits against state officials in their official capacity should be treated as suits against the state. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). This is because a suit against a state official in his or her official capacity is a suit against the official's office and therefore is no different from a suit against the state itself. *Will v. Mich. Dep't of State Police*, 491

U.S. 58, 71 (1989).  The Eleventh Amendment thus shields state officials, acting in their official

capacities, from claims for monetary relief.  *Hill v. Kemp*, 478 F.3d 1236, 1255–56 (10th Cir.

2007).  Moreover, a § 1983 action may only be brought against a person.  *See* 42 U.S.C. § 1983.

Neither states nor state officers sued in their official capacity for monetary damages are persons

within the meaning of § 1983.  *Will*, 491 U.S. at 70–71.

Therefore, this court respectfully **RECOMMENDS** that Plaintiff's official capacity claims

for money damages be **DISMISSED**, as they are barred by the Eleventh Amendment and should

dismissed, under Rule 12(b)(1), for lack of subject matter jurisdiction.[10]  *Hunt v. Bennett*, 17 F.3d

1263, 1267 (10th Cir. 1994).

### 2.  *The Remaining Official Capacity Claims*

Official capacity suits "impose liability on the entity that the sued public servant

represents."  *Sawyers v. Norton*, 962 F.3d 1270, 1278 n.4 (10th Cir. 2020) (quoting *Couser v. Gay*,

959 F.3d 1018, 1023 (10th Cir. 2020)) (alterations omitted).  The official capacity claims against

Officer Brewer, a CSPD police officer, are thus construed as claims against the City of Colorado

Springs.  *See Jordan v. Charles Keys, Neighborhood Servs.*, No. 15-cv-02134-GPG, 2015 WL

6171570, at *3 (D. Colo. Oct. 21, 2015) (construing official capacity claims against local police

officers as municipal liability claims); *accord Hafer v. Melo*, 502 U.S. 21, 25 (1991).

"A municipality may not be held liable under 42 U.S.C. § 1983 simply because it employs

a person who violated a plaintiff's federally protected rights."  *Jenkins v. Woods*, 81 F.3d 988, 993

---

[10] Defendant did not move for the dismissal of the official capacity claims for money damages.
However, the court has a duty to consider its subject matter jurisdiction *sua sponte*.  Fed. R. Civ.
P. 12(h)(3); *see also McAlester v. United Air Lines, Inc.*, 851 F.2d 1249, 1252 (10th Cir. 1988)
(The issue of subject matter jurisdiction may be raised *sua sponte* by the court at any time during
the course of the proceedings.).

(10th Cir. 1996) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).  Rather, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) (quoting *Monell*, 436 U.S. at 694).

To establish municipal liability under § 1983, a plaintiff "must allege facts showing: (1) an official policy or custom, (2) causation, and (3) deliberate indifference." *Crowson v. Wash. Cnty. Utah*, 983 F.3d 1166, 1184 (10th Cir. 2020) (quoting *Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1034 (10th Cir. 2020)).  A "policy or custom" can take the form of "(1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused." *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quoting *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189-90 (10th Cir. 2010)) (internal quotation marks omitted).  Causation is established, if the challenged policy or practice is shown to be "closely related to the violation of the plaintiff's federally protected right." *Schneider*, 717 F.3d at 770. "This requirement is satisfied if the plaintiff shows that the [entity] was the 'moving force' behind the injury alleged." *Id.* (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)).

Finally, to establish municipal liability, the plaintiff must show that the policy or custom "was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Id.* at 769. This "deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Quintana*, 973 F.3d at 1034 (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998)).

Here, Plaintiff makes the following allegations implicating municipal liability: (1) the CSPD "has a long-standing history of using excessive force and other unconstitutional tactics against law-abiding citizens who assert their rights under the U.S. Constitution;" (2) the CSPD "uses the TEU in low-risk circumstances in order to attempt to justify the TEU's existence and its expenditures, including its officers being assigned to the TEU on a full-time basis;" and (3) "[e]ven in clear-cut cases of unconstitutional actions by its officers, the CSPD routinely denies any allegations of wrongdoing and does not correct the deficiencies." (Doc. No. 1 at ¶¶ 28, 31.) In other words, the sole theory of municipal liability advanced by Mr. Halik is that the CSPD has a "widespread practice" of allowing its officers to use excessive force, as well as deploying its SWAT team in low-risk situations without justification. Mr. Halik alleges that Defendants acted pursuant to this practice on February 20, 2019, when they "executed the raid" of his home. (*Id.* at ¶¶ 7, 28.)

These allegations, even taken as true and construed in Mr. Halik's favor, fail to plausibly show "an informal custom amounting to a widespread practice" of permitting excessive force by CSPD officers, or of deploying the TEU unnecessarily into low-risk situations. *Crowson*, 983 F.3d at 1184. Specifically, while Plaintiff alleges that "[t]he TEU has been the subject of numerous

actions brought by others before this Court alleging excessive force and other unconstitutional tactics similar to those described herein," he fails to provide *any* non-conclusory facts concerning similar instances of that purported practice.  *See Waller*, 932 F.3d at 1290 ("Mr. Waller's allegations—describing only one similar incident of excessive force prior to his own injuries—fall far short of plausibly alleging a 'widespread practice' of excessive force[.]"); *Sandberg v. Englewood, Colo.*, 727 F. App'x 950, 964 (10th Cir. 2018) (holding that a plaintiff failed to adequately allege a custom or policy, where the complaint "never set[] out the text of any [municipal] policy," and did not "describe any prior incidents that would have established a pattern or practice on the part of the city that could cause [the court] to view subsequent inaction as evidence of a policy of deliberate indifference").  Without such allegations, the Complaint "stops short of the line between possibility and plausibility of entitlement to relief."  *Mocek v. City of Albuquerque*, 813 F.3d 912, 934 (10th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  Therefore, this court respectfully **RECOMMENDS** that Mr. Halik's remaining official capacity claims be **DISMISSED**, under Rule 12(b)(6), for failure to state a claim.

### III.  *The State Law Claims*

Finally, the Complaint appears to allege several state law claims, including claims for stalking, harassment, defamation, discrimination, intentional infliction of emotional distress, and gross negligence.  (Doc. No. 1 at ¶¶ 37-38.)  Officer Brewer moves to dismiss these claims, under Rule 12(b)(1), contending that they are barred by the Colorado Governmental Immunity Act.  (Doc. No. 6 at 15.)

The Colorado Governmental Immunity Act ["CGIA"] codifies governmental immunity from suit in tort cases brought against Colorado public entities and public employees.  Colo. Rev.

Stat. §§ 24-10-101 *et seq*.  At issue here are the CGIA's notice provision, which requires any person claiming to have suffered an injury by a public entity or one of its employees to file a written notice within 182 days after the date of the discovery of the injury as a jurisdictional prerequisite to filing suit.[11]  Colo. Rev. Stat. § 24-10-109(1).  "Colorado courts consistently hold that a plaintiff must plead compliance with the CGIA's notice provisions in the complaint to avoid dismissal."  *Aspen Orthopaedics & Sports Med., LLC v. Aspen Valley Hosp. Dist.*, 353 F.3d 832, 840 (10th Cir. 2003) (collecting cases); *see also Rose v. City & Cnty. of Denver*, No. 17-cv-2263-MSK-STV, 2018 WL 1744723, at *3 (D. Colo. Apr. 11, 2018) (dismissing an intentional infliction of emotional distress claim for failure to comply with the CGIA's notice provision).  Here, Plaintiff has not alleged compliance with the CGIA's notice provision in his Complaint.  Nor does Plaintiff address this issue in his Response.  Therefore, because Plaintiff has not alleged compliance with the CGIA's notice provision, his state law claims should be dismissed without prejudice for lack of subject matter jurisdiction.  *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) (stating that dismissal for lack of subject matter jurisdiction should be without prejudice).

---

[11] Section 24-10-109(1) states in full:

Any person claiming to have suffered an injury by a public entity or by an employee thereof while in the course of such employment, whether or not by a willful and wanton act or omission, shall file a written notice as provided in this section within one hundred eighty-two days after the date of the discovery of the injury, regardless of whether the person then knew all of the elements of a claim or of a cause of action for such injury. Compliance with the provisions of this section shall be a jurisdictional prerequisite to any action brought under the provisions of this article, and failure of compliance shall forever bar any such action.

**CONCLUSION**

For the reasons set forth herein, this court respectfully **RECOMMENDS** that:

(1)     "Defendant Brewer's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and

12(b)(6)" (Doc. No. 6) be **GRANTED, in part, and DENIED, in part**.

Specifically, Plaintiff's state law claims should be dismissed without prejudice,

under Rule 12(b)(1), for failure to comply with Colo. Rev. Stat. § 24-10-109(1).

Plaintiff's *Bivens* claims should be dismissed, under Rule 12(b)(6), for failure to

state a claim.  As to Plaintiff's § 1983 claims, the official capacity claims for

monetary damages should be dismissed, under Rule 12(b)(1), for lack of subject

matter jurisdiction.  The remaining official capacity claims should be dismissed,

under Rule 12(b)(6), for failure to state a claim.  The Fourth Amendment claims

against Defendant Brewer, in his individual capacity, arising from the strip search

and the destruction of the urn, should proceed.  Plaintiff's remaining Fourth

Amendment claims, his Fifth Amendment claims, and his Fourteenth Amendment

procedural due process claims, should be dismissed.  The Fourteenth Amendment

substantive due process claims, which arise from the contested searches and

seizures, should also be dismissed.  The remaining Fourteenth Amendment

substantive due process claims should proceed.[12]

---

[12] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for

DATED:  February 17, 2022                    BY THE COURT:

                                             _____
                                             Nina Y. Wang
                                             United States Magistrate Judge

---

appellate review."  *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).