IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Maritza Dominguez Braswell**

Civil Action No. 21–cv–00508–PAB–MDB

BRIAN HALIK,

    Plaintiff,

v.

A. BREWER, Officer, Colorado Springs Police Department, individually and in his official capacity, and
UNKNOWN OFFICERS OF THE TACTICAL ENFORCEMENT UNIT, Colorado Springs Police Department, individually and in their official capacity,

    Defendants.

## ORDER

This matter is before the Court on Defendant's "Motion for Leave to File Answer Out of Time." (["Motion"], Doc. No. 30.) Plaintiff has responded in opposition to the Motion, and Defendant has replied. (["Response"], Doc. No. 36; ["Reply"], Doc. No. 37.) For the following reasons, the Motion is **GRANTED**.

### SUMMARY FOR *PRO SE* PLAINTIFF

The Court is granting Defendant's motion to file an answer out of time, because Defendant's failure to file an answer was inadvertent and there is no evidence of bad faith on Defendant's part. Additionally, under these circumstances, the impact on the proceedings is minimal, and precluding the out of time answer would result in prejudice to Defendant. The Court will treat Doc. No. 20-5 as the operative Answer.

## STATEMENT OF THE CASE

Plaintiff Brian Halik ["Plaintiff"], who is a *pro se* litigant,[1] brings this action pursuant to 42 U.S.C. § 1983, asserting violations of his constitutional rights by a Colorado Springs Police Department ["CSPD"] officer, Defendant A. Brewer ["Defendant"], as well as unknown members of CSPD's SWAT team. (Doc. No. 1.) Specifically, Plaintiff alleges that, on the morning of February 20, 2019, Defendant conducted an unlawful "raid" of his home, illegally seized "tens of thousands of dollars" worth of his "belongings," and "strip searched" him "at gun point" without any "legitimate law enforcement purpose" for doing so. (*Id.* at ¶¶ 2, 12-20.) Plaintiff further alleges that, since these events transpired, Defendant has continued to engage in "extensive corruption and misconduct" to "frame" him and otherwise "violate" his "constitutional rights." (*Id.* at ¶ 10.)

Based on these allegations, on February 19, 2021, Plaintiff commenced this lawsuit, asserting claims under the Fourth, Fifth, and Fourteenth Amendments, as well as claims for "stalking, harassment, defamation, discrimination, and intentional infliction of emotional distress." (*Id.* at ¶¶ 36-37.) The case was assigned to Chief Judge Brimmer and drawn to Magistrate Judge Tafoya for all motions and pretrial matters. (Doc. No. 2.)

On June 9, 2021, Defendant filed a motion to dismiss the case, in its entirety, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. No. 6.) That motion was referred to Magistrate Judge Tafoya by Chief Judge Brimmer. (Doc. No. 7.) While Defendant's motion to

---

[1] Mindful of Plaintiff's *pro se* status, the court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding the allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers").

dismiss was still pending, on February 1, 2022, the case was reassigned from Magistrate Judge Tafoya to Magistrate Judge Wang, due to Magistrate Judge Tafoya's retirement. (Doc. No. 24.) On February 17, 2022, Magistrate Judge Wang issued a Recommendation on Defendant's motion to dismiss. (Doc. No. 25.) On March 28, 2022, Chief Judge Brimmer issued an Order accepting Magistrate Judge Wang's Recommendation, in part, and granting Defendant's motion to dismiss, in part. (Doc. No. 27.) As a result, only the following claims remain viable in this case: (1) a Fourth Amendment claim against Defendant, in his individual capacity, arising from the February 20, 2019 strip search incident; and (2) Fourteenth Amendment substantive due process claims against Defendant, in his individual capacity, arising from Defendant's conduct subsequent to the February 20, 2019 search of Plaintiff's home. (*Id.* at 11-13; *see* Doc. No. 25 at 40.)

Pursuant to Federal Rule of Civil Procedure 12(a)(4)(A), Defendant's answer to Plaintiff's complaint was due on April 11, 2022. However, that deadline came and went without any word from Defendant. Meanwhile, on July 7, 2022, this case was reassigned again, from Magistrate Judge Wang to the undersigned Magistrate Judge, upon the undersigned's appointment to the bench. (Doc. No. 28.)

Following these events, on September 6, 2022, the Court issued an Order setting a Scheduling Conference for October 5, 2022, and directing the parties to confer and file a joint proposed scheduling order by September 28, 2022. (Doc. No. 29.) Ten days later, on September 16, 2022, Defendant filed the present Motion, requesting leave to file an answer out of time. (Doc. No. 30.)

## STANDARD OF REVIEW

The sole issue before the Court is whether Defendant should be permitted to file an answer to Plaintiff's complaint out of time. Federal Rule of Civil Procedure 6(b) provides, in relevant part, that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). "Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect, it is clear that 'excusable neglect' under Rule 6(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993) (interpreting "excusable neglect" in the context of the Federal Rules of Bankruptcy Procedure) (internal citations omitted); *see also Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1494 (10th Cir. 1995) (applying *Pioneer* definition to Rule 6(b) analysis). Indeed, "Congress plainly contemplated that courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake or carelessness, as well as by intervening circumstances beyond the party's control." *Pioneer*, 507 U.S. at 388. The determination as to whether neglect of a deadline is excusable "is an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* at 395. A finding of excusable neglect under Rule 6(b) requires both a demonstration of good faith by the party seeking the enlargement, as well as a finding that there was a reasonable basis for not complying within the specified period. *In re Four Seasons Secs. Laws Litig.*, 493 F.2d 1288, 1290 (10th Cir. 1974). In evaluating whether neglect is excusable, the Court considers four relevant factors: (1) "the danger of prejudice" to the nonmoving party; (2) "the length of the

delay and its potential impact on judicial proceedings"; (3) "the reason for the delay, including whether it was within reasonable control of the movant"; and (4) "whether the movant acted in good faith." *Perez v. El Tequila, LLC*, 847 F.3d 1247, 1253 (10th Cir. 2017) (quoting *Pioneer*, 507 U.S. at 395). "The most important factor is the third; an inadequate explanation for delay may, by itself, be sufficient to reject a finding of excusable neglect." *Id.* (citing *United States v. Torres*, 372 F.3d 1159, 1163 (10th Cir. 2004)). Where the requirements of Rule 6(b) are satisfied, the trial court has discretion to permit the movant's late filing. *Panis*, 60 F.3d at 1494.

## ANALYSIS

**The Reason for the Delay**

The Court begins by addressing the most important factor, *i.e.,* the reason for the delay. *Perez*, 847 F.3d at 1253. In the present Motion, Defendant's attorney, Anne Turner, candidly acknowledges that she "failed to file an answer on time due to inadvertent oversight." (Doc. No. 30 at ¶ 5.) Ms. Turner reports that neither she, nor the paralegals in her office tasked with docketing deadlines, "remembered the answer deadline in this instance." (*Id.*) Ms. Turner further advises that "it was the September 6, 2022 order" issued by this Court nearly five months after Defendant's responsive pleading deadline had lapsed, which "refocused [her] attention to this case and the need to file an Answer." (*Id.* at ¶ 6; *see* Doc. No. 29.) Defense counsel insists that "[t]he omission was entirely inadvertent and made in good faith." (*Id.* at ¶ 5.)

Here, the Court has no reason to question Ms. Turner's representation that her client's delay in filing a responsive pleading reflects an honest mistake. There is nothing within the record to suggest the delay was strategic or otherwise intentional. *C.f. Magraff v. Lowes HIW, Inc.*, 217 F. App'x 759, 761 (10th Cir. 2007) (finding no excusable neglect, where the movant's

5

counsel "deliberately waited until the end of the thirty-day period to file [a] notice of appeal, increasing the risk that unforeseen events . . . might interfere with his ability to meet the deadline"); *Stringfellow v. Brown*, 105 F.3d 670, 1997 WL 8856, at *1 (10th Cir. 1997) (affirming the trial court's refusal to allow a late filing, where the moving party's counsel "received the motion and knew of the need to respond, but simply disregarded the deadline based on the volume of evidence to be reviewed and his workload"). Rather, the circumstances surrounding Defendant's failure to file a responsive pleading suggest conduct that rises to the level of, at most, negligence. *See Jackson v. Wal-Mart Stores E., LP*, No. 20-2469-JWB, 2021 WL 102818, at *1 (D. Kan. Jan. 12, 2021) (finding the reason for the delay to support a finding of excusable neglect, where the moving party's attorney represented that the failure to meet the deadline was due to an inadvertent mistake, and where there was nothing within the record to suggest that the delay resulted from intentional conduct); *see also Garcia v. Berkshire Life Ins. Co. of Am.*, No. 04-cv-01619-LTB-BNB, 2008 WL 821805, at *3 (D. Colo. Mar. 26, 2008) (finding excusable neglect, where the reason for the delay was "simple inadvertence" on the part of the movant's counsel). Therefore, this factor weighs in favor of finding excusable neglect.

**The Danger of Prejudice to the Nonmovant**

The Court next considers the potential danger of prejudice to Plaintiff. *Pioneer*, 507 U.S. at 395. Plaintiff argues that he would suffer "significant prejudice" if Defendant was permitted to file an answer out of time. (Doc. No. 36 at ¶ 1.) As support for that assertion, Plaintiff has submitted his own affidavit, in which he states that, on the advice of his medical health care providers, he intends to "promptly enter an intensive psychiatric residential treatment program" upon resolution of this case. (Doc. No. 36-1 at ¶ 2.) Plaintiff avers that "[t]he treatment program

is similar to an inpatient setting wherein [he] will not have the ability to attend to this case." (*Id.*) Plaintiff laments that Defendant is attempting "to prolong this case even further," thereby preventing Plaintiff "from seeking the medical care that he needs and the ability to move on with his life." (Doc. No. 36 at ¶ 1.) In addition, Plaintiff argues that the "astronomical" delay caused by Defendant's failure to file an answer "will undoubtedly impact witnesses' memories and thereby cloud the facts of this case[.]" (*Id.* at ¶ 2.)

Plaintiff's arguments concerning prejudice appear predicated on his belief that the delays in this case have been caused by Defendant's inaction. However, as Defendant points out, it is the trial court's setting of initial case deadlines that triggers the progression of the case into discovery, not the defendant's filing of an answer. (Doc. No. 37 at ¶ 3.) Although this lawsuit was commenced in February 2021, it was not until September 2022 that a scheduling conference was set, meaning that the case was effectively stalled for close to nineteen months. (*Compare* Doc. No. 1, *with* Doc. No. 29.) Defendant's five-month delay in filing an answer occurred almost entirely within that nineteen-month period of case inactivity. Plaintiff does not explain how he has been prejudiced specifically by Defendant's delay in filing an answer, as opposed to the Court's delay in setting initial case deadlines.[2] Nor does the Court find anything within the record to suggest that Defendant's delay in filing an answer has affected the viability of Plaintiff's claims, particularly at this early stage of the litigation, where discovery has only recently commenced, and where defense counsel acted quickly to remedy the mistake. *See S. Star Cent. Gas Pipeline, Inc. v. Greuel*, No. 08-2115-KHV, 2008 WL 11383359, at *2 (D. Kan.

---

[2] The record shows that Plaintiff did not raise the issue of case progression with the Court or with opposing counsel at any point prior to Defendant's filing of the present Motion. Plaintiff provides no explanation for his own neglect of the case.

Oct. 10, 2008) (finding that the plaintiff would not be unduly prejudiced by allowing the defendant to file an answer out of time, where the parties still had "nearly three and a half months" within which to complete discovery); *see also Elmer v. All Around Roustabout, LLC*, No. 15-cv-00601-RM-KLM, 2015 WL 6549305, at *4 (D. Colo. Oct. 7, 2015) (observing that prejudice to the plaintiff is "mitigated when the defendant acted quickly to remedy the mistake"). Therefore, the Court finds this factor to support a finding of excusable neglect.

**The Length of the Delay and Its Potential Impact on Judicial Proceedings**

As to the length of the delay and its potential impact on judicial proceedings, Defendant filed the present Motion on September 16, 2022, which was roughly five months after his answer was due. This five-month delay occurred within the nineteen-month period during which the case remained inactive, with no deadlines set. A Scheduling Conference was only recently held, and no trial dates have been set. Given the totality of these circumstances, the delay's impact on the proceedings, if any, is minimal. *See Wojdacz v. Blackburn*, No. 13-cv-01738-MSK-MJW, 2013 WL 12246939, at *2 (D. Colo. Oct. 30, 2013) (finding excusable neglect so as to warrant an extension of time to answer the complaint, where a scheduling order had not yet been entered, and thus, the impact on judicial proceedings was, at most, "minimal"); *Baker v. Promise Reg'l Med. Ctr.*, No. 10-CV-01257-KHV-DJW, 2012 WL 899265, at *2 (D. Kan. Mar. 16, 2012) ("The length of the delay in designating Plaintiff's expert was approximately seven weeks—a relatively short time in the context of the litigation proceedings as a whole."). Therefore, this factor also supports a finding of excusable neglect.

**Whether the Movant Acted in Good Faith**

The final factor addresses whether Defendant has acted in good faith. *Pioneer*, 507 U.S. at 395. In this case, there is nothing within the record to suggest that Defendant moved for leave to file his answer out of time in bad faith, or that he failed to file an answer in bad faith. *See Brito v. Truong*, No. 20-cv-02680-MEH, 2022 WL 672483, at *3 (D. Colo. Mar. 7, 2022) (finding the defendants' failure to timely file responsive pleading to be excusable, where there was no evidence that the defendants "acted in willful disregard of the litigation's obligations," and where the defendants, upon learning of their mistake, "responded very quickly indeed"); *see also Hall v. Life Care Ctrs. of Am.*, 2018 WL 2035966, at *2 (D. Kan. May 1, 2018) (allowing a defendant to file an answer over one year after the deadline lapsed, where there was no evidence of bad faith, though acknowledging that the length of the delay was "alarming"). Accordingly, this factor also weighs in favor of finding excusable neglect.

## CONCLUSION

On this record, then, the Court finds that Defendant has established excusable neglect under Rule 6(b) so as to warrant an extension of the answer deadline.

Accordingly, **IT IS ORDERED THAT**:

(1) The "Motion for Leave to File Answer Out of Time" (Doc. No. 30) is **GRANTED**.

(2) The Clerk is hereby directed to file the "Answer of Defendant Brewer" (Doc. No. 30-1) as a separate docket entry.

DATED: November 8, 2022.

BY THE COURT:

Maritza Dominguez Braswell
United States Magistrate Judge